**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EDAR ROGLER,<br>*Plaintiff*,<br>v.<br>MURIEL E. BOWSER, *et al.*,<br>*Defendants*. | Civil Action No. 25 - 1656 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Edar Rogler, proceeding pro se, brings this action against three sets of Defendants: (1) Richard Reyes-Gavilan, Executive Director of the District of Columbia Public Library ("DCPL"), in his official and individual capacities; Dr. Tonya Chapman, DCPL's Chief of Public Safety, in her official and individual capacities; Kim Fuller, DCPL's former Director of Facilities, in her individual capacity; Jonathan Banks, DCPL's Interim Director of Facilities,[1] in his official capacity; and the unnamed head librarian of the Mt. Pleasant Public Library, in his or her official and individual capacities; (2) the DCPL Trustees in their official capacities; and (3) two Jane Does. ECF No. 1-2.[2] Ms. Rogler brings claims under 42 U.S.C. § 1983 for alleged violations of the First Amendment; the Fifth Amendment; the D.C. Human Rights Act ("DCHRA"), D.C. Code

[1] Because Ms. Fuller is no longer employed as DCPL's Director of Facilities, her successor, Mr. Banks, is automatically substituted in for her as it concerns the official-capacity claim. *See* Fed. R. Civ. P. 25(d).

[2] Ms. Rogler also sued District of Columbia Mayor Muriel Bowser, but she voluntarily dismissed her claims against Mayor Bowser. ECF No. 10; *see* July 1, 2025 Minute Order.

§ 2-1401.01 *et seq.*; and the common-law tort of invasion of privacy. ECF No. 1-2, at 2-12.[3] She seeks injunctive and declaratory relief and $3 million in compensatory and punitive damages. *Id.* at 11-12. Defendants have moved to dismiss the claims for injunctive relief under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and the remaining claims under Rule 12(b)(6) for failure to state a claim. ECF No. 18. For the reasons explained below, the court will grant the motion and dismiss Ms. Rogler's complaint without prejudice.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations from Ms. Roger's complaint, ECF No. 1-2, at 2-12, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Ms. Rogler is proceeding pro se, the court will also consider her opposition to Defendants' motion to dismiss. *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151-52 (D.C. Cir. 2015) (per curiam); *see* ECF No. 22. The court further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

Ms. Rogler has patronized the District's public libraries since 2012. ECF No. 1-2, at 6 ¶ 1. In December 2024, while Ms. Rogler was using the women's restroom at the Mt. Pleasant Library, an employee entered and "yelled" at her for closing the main door to the restroom. *Id.* at 6 ¶ 2. Ms. Rogler informed the employee that she had closed the main door so that she could leave the door to the bathroom stall she intended to use open, because the stall she was intending to use could not fit her "cart with medical supplies," and the larger handicapped stall had "fecal matter all over [it]." *Id.* at 6 ¶ 4. A manager arrived and told Ms. Rogler that the library "secretly

---

[3] When citing ECF No. 1-2 and ECF No. 22, the court refers to the CM/ECF-generated numbers at the top of each page rather than any internal pagination.

video-tapes the inside of the ladies' restroom" because of "violence[,] crime[,] sex[,] [and] drugs." *Id.* at 7 ¶ 6. In response, Ms. Rogler notified both employees that she would sue DCPL "for violating her rights." *Id.* at 7 ¶ 7.

The same month, Ms. Rogler got into a physical altercation with another patron at the Mt. Pleasant Library. *Id.* at 7-8 ¶¶ 8-13. The incident began when a woman who was sitting at a library computer stood up and came near Ms. Rogler before sitting down at the computer again. *Id.* at 7 ¶¶ 8-9. After Ms. Rogler went to retrieve materials from the printer, the woman "threatened her again and took [her] printout." *Id.* at 7 ¶ 11. The woman then "stated that she knew the [papers] were [Ms.] Rogler's" but kept them anyway, *id.* at 8 ¶ 12, so Ms. Rogler "defended her personal property and her personal self according to [the] D.C. Code and laws," *id.* at 8 ¶ 13.

On December 22, 2024, DCPL barred Ms. Rogler from entering any DCPL premises for one year for violating the "category four rule[]" that prohibits "[c]ommitting, or attempting to commit, any activity that would constitute a violation of any Federal or District of Columbia criminal statute, ordinance, code, or law." *Code of Conduct*, DC Public Library;[4] *see* ECF No. 1-2, at 13. Ms. Rogler's one-year bar is the lowest sanction DCPL issues for category four violations. *Code of Conduct*, *supra*. Following DCPL's barring notice, Ms. Rogler requested a "Bar Appeal." ECF No. 1-2, at 13. Dr. Chapman informed Ms. Rogler on April 9, 2025 that the Office of Public Safety was sustaining the one-year bar because Ms. Rogler had "engage[d] in behavior that was disruptive and a violation of DCPL rules," but that she had a right to appeal DCPL's decision to the Superior Court of the District of Columbia's Civil Division within thirty days. *Id.*

---

[4] *Available at* https://perma.cc/QW8F-TEM7.

Simultaneously, in February 2025, Ms. Rogler filed a complaint in Superior Court against District of Columbia Mayor Muriel Bowser, alleging that DCPL had failed to respond to her inquiries about an administrative review of the barring notice and asking the court to order such review or, alternatively, declare a default and vacate the "unlawful barring." Compl. at 1-2, *Rogler v. Bowser*, No. 2025-CAB-1005 (D.C. Super. Ct. Feb. 19, 2025). Ms. Rogler subsequently amended her complaint to add Dr. Chapman and the DCPL Trustees as Defendants, and she claimed that her suit was a timely appeal of the barring decision. Am. Compl. at 1, 4, *Rogler*, No. 2025-CAB-1005 (D.C. Super. Ct. Feb. 20, 2025).[5] In addition to reiterating her request for administrative review or vacatur of the one-year bar, Ms. Rogler also alleged in her amended complaint that the bar violated her right to due process. *Id.* at 4, 7. Defendants moved to dismiss that case, Mot. to Dismiss, *Rogler*, No. 2025-CAB-1005 (D.C. Super. Ct. May 19, 2025), and the Superior Court (Oler, J.) granted the motion on May 23, 2025, Order, *Rogler*, No. 2025-CAB-1005 (D.C. Super. Ct.).

While that action was pending, Ms. Rogler filed a second complaint in Superior Court—the one that is now before this court—along with a motion to consolidate both Superior Court cases. Compl., *Rogler v. Bowser*, No. 2025-CAB-2948 (D.C. Super. Ct. May 8, 2025); Mot. to Consolidate, *Rogler*, No. 2025-CAB-2948 (D.C. Super. Ct. May 8, 2025); *see* ECF No. 1-2, at 2-12. The present complaint alleges that Defendants "retaliated against [Ms. Rogler] for objecting to being secretly video-taped" in the Mt. Pleasant Library, "complaining about fecal matter in [the] handicap[ped] stall," and "stating [that] she would sue in federal court"—and also

[5] When citing Ms. Rogler's amended complaint in Superior Court case number 2025-CAB-1005, the court refers to the PDF-generated numbers at the top of each page rather than any internal pagination.

"violated her civil rights, her rights to privacy, her rights to self-defense, her [First] [A]mendment rights," the DCHRA, 42 U.S.C. § 1983, and the Fifth Amendment. ECF No. 1-2, at 9-10 ¶¶ 20, 26. Ms. Rogler seeks an injunction that (1) prevents Defendants from "secretly videotaping the inside of [the] ladies' restroom," "refus[ing] to clean [the] handicapped stall," and "yelling and belittling" her; (2) requires the "ladies' restroom door [to] be opened"; (3) "mandate[s] rules permitting self-defense," requiring "self-defense classes," and directing "staff to monitor [the] printer" at the Mt. Pleasant Library; (4) reverses and vacates DCPL's one-year bar against her; and (5) prohibits Defendants from "applying rules that violate the Constitution or any statute." ECF No. 1-2, at 11 ¶ 27. Ms. Rogler also requests a declaration "that [Defendants'] conduct, policies and/or procedures violate[] the U.S. Constitution, the D.C. Human Rights Act[,] and 42 U.S.C. § 1983." ECF No. 1-2, at 11 ¶ 27. Finally, she seeks $3 million in compensatory and punitive damages. *Id.*

Defendants removed the case to this court on May 22, 2025. ECF No. 1. Ms. Rogler then moved for the appointment of counsel, ECF No. 5, which the court denied, ECF No. 6. After Ms. Rogler voluntarily dismissed her claims against Mayor Bowser, ECF No. 10, the remaining Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), ECF No. 18. The court thereafter issued a *Fox*/*Neal* order in which it directed Ms. Rogler, who is proceeding in this matter pro se, to file a brief in opposition to the motion to dismiss and advised her of the consequences of failing to do so. ECF No. 19. Ms. Rogler filed her opposition, ECF No. 22, and Defendants' motion is fully briefed, ECF Nos. 18, 22, 23.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*,

567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

### C. Pro Se Litigants

Pleadings by pro se litigants are generally held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court therefore "liberally construe[s]" the amended complaint and all pro se filings. *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Brown*, 789 F.3d at 151-52. This liberal construction "is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009). Thus, "the complaint must still present a claim on which the Court can grant relief" in order to defeat a motion to dismiss under Rule 12(b)(6). *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (internal quotation marks omitted) (quoting *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013)).

## III. DISCUSSION

Defendants seek dismissal on several grounds. First, they contend that the court lacks subject-matter jurisdiction over Ms. Rogler's claims for injunctive relief because Ms. Rogler has not established Article III standing. ECF No. 18, at 6. Second, they assert that Ms. Rogler has failed to allege a viable theory of municipal liability or a predicate constitutional violation and that, as a result, she has not adequately pleaded a Section 1983 claim against Defendants in their

official capacities. *Id.* at 7-18. Third, Defendants maintain that Mr. Reyes-Gavilan, Dr. Chapman, Ms. Fuller, and the Mt. Pleasant Library's head librarian—who are named in their individual capacity—are entitled to qualified immunity. *Id.* at 18-21. Finally, if the court dismisses Ms. Rogler's federal claims, Defendants ask the court to decline to exercise supplemental jurisdiction over Ms. Rogler's state-law claims. *Id.* at 22-24. In the event that the court retains jurisdiction over Ms. Rogler's DCHRA and common-law invasion-of-privacy claims, Defendants seek dismissal for failure to state a claim. *Id.* at 22-26.

The court addresses each argument in turn. It concludes that Ms. Rogler lacks Article III standing to obtain an injunction or forward-looking declaratory relief, that her request to vacate the one-year DCPL barring notice is moot, and that she has not plausibly alleged Section 1983 municipal liability or any constitutional violation. The court therefore will grant Defendants' motion to dismiss Ms. Rogler's claims involving federal questions. Additionally, the court declines to exercise supplemental jurisdiction over Ms. Rogler's DCHRA and common-law claims, so it will dismiss those allegations without prejudice to her refiling in Superior Court.

## A. Jurisdictional Issues

Federal courts have limited jurisdiction and may only "adjudicate 'Cases' and 'Controversies.'" *A.M.S. v. Edlow*, 826 F. Supp. 3d 153, 166 (D.D.C. 2026) (quoting U.S. Const. art. III, § 2). The court thus starts, as it must, with two threshold issues: standing and mootness. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 102 (1998). Defendants contend that the court has no authority to consider Ms. Rogler's request for injunctive relief because Ms. Rogler has no Article III standing to seek that remedy. ECF No. 18, at 6. In response, Ms. Rogler faults Defendants for removing the case to federal court "knowing that [they] would allege that this court lacks jurisdiction" and asks the court to remand the case to Superior Court. ECF No. 22, at 2-3.

The court agrees with Defendants that Ms. Rogler has not established Article III standing to obtain an injunction. Additionally, with respect to Ms. Rogler's request that the court vacate DCPL's one-year barring notice, the court concludes that the request is moot.

**1. Standing**

The "irreducible constitutional minimum" of standing contains three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560-61). Any injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). "Because 'standing is not dispensed in gross,' courts must evaluate standing for 'each claim' that [a] plaintiff[] press[es] and 'for each form of relief that [she] seek[s].'" *Angelo v. District of Columbia*, 180 F.4th 324, 329 (D.C. Cir. 2026) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). For a plaintiff like Ms. Rogler seeking forward-looking relief like an injunction, "a past violation will not suffice to establish injury in fact absent reason to believe it will occur again." *Doe v. Off. of Personnel Mgmt.*, 813 F. Supp. 3d 156, 176 (D.D.C. 2025); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983). Put differently, she must "establish a sufficient likelihood of future injury," that is "*certainly impending*," because a "*possible* future injury" will not suffice. *Ali v. Al-Nahyan*, 808 F. Supp. 3d 88, 119 (D.D.C. 2025) (first quoting *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); then quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Ms. Rogler, as the party invoking this court's jurisdiction, "bears the burden of establishing" standing. *Lujan*, 504 U.S. at 561.

Ms. Rogler falls well-short of alleging Article III standing. Her complaint focuses exclusively on two incidents from December 2024. ECF No. 1-2, at 6-10 ¶¶ 2-26. To establish an Article III injury, Ms. Rogler "may not rest on past injury alone," but "[p]ast wrongs may serve as evidence bearing on whether there is a real and immediate threat of repeated injury." *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (alteration in original) (internal quotation marks and citation omitted). Crediting Ms. Rogler's allegations, the complaint still supplies no inference of future harm. Ms. Rogler alleges that she has patronized the District's public libraries "since 2012 without any disciplinary action called barring." ECF No. 1-2, at 6 ¶ 1. But she does not allege that she will continue to visit the District's public libraries. *See Inko-Tariah v. House*, No. 22-CV-1365, 2022 WL 16852673, at *3 (D.D.C. Nov. 10, 2022) ("Plaintiff's apparent indifference to returning to Nationals Park for a baseball game fails to establish 'a real and immediate' threat of future harm."). But even if Ms. Rogler had expressed an intent to continue her library patronage, she does not allege that she will suffer the same or similar injuries if and when she returns. *McKnight-Nero v. Walmart, Inc.*, No. 20-CV-1541, 2021 WL 663315, at *3 (D.D.C. Feb. 19, 2021) ("Even if Plaintiff had made a bare assertion of intent to return . . . , that alone is insufficient to show 'real or immediate threat that the plaintiff will be wronged again.'" (quoting *Jefferson v. Stinson Morrison Heckler LLP*, 249 F. Supp. 3d 76, 81 (D.D.C. 2017))). Indeed, Ms. Rogler went twelve years without any disciplinary action, making any future injury implausible. The court will thus dismiss without prejudice Ms. Rogler's request for injunctive relief for lack of subject-matter jurisdiction. And, to the extent Ms. Rogler's request is for a declaration, *see* ECF No. 1-2 at 11 ¶ 27, seeks "declaratory relief with respect to ongoing or future violations, [Ms. Rogler] lack[s] a cognizable injury and [that] claim[] fail[s] for the same reasons," *Gerlich v. U.S. Dep't of Just.*, 659 F. Supp. 2d 1, 19 (D.D.C. 2009).

### 2. Mootness

"Unlike the standing inquiry, which focuses on whether the plaintiff is the proper party to sue, the . . . mootness [doctrine] ask[s] whether the suit has been brought at the proper time." *Nat'l Pub. Radio, Inc. v. Trump*, 827 F. Supp. 3d 48, 72 (D.D.C. 2026). Because the court may only "resolve 'actual, ongoing controversies,'" *Trump v. Mazars USA, LLP*, 39 F.4th 774, 785 (D.C. Cir. 2022) (quoting *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019)), it "lose[s] jurisdiction over a [claim]—and must dismiss it as moot—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome,'" *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 525 (D.C. Cir. 2025) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). In their reply brief, Defendants assert that DCPL's one-year bar ended on December 22, 2025, so Ms. Rogler's request to reverse and vacate the barring notice is moot. ECF No. 23, at 3-4.[6] The court agrees. The "challenged [DCPL bar] ha[s] ended, and it is therefore impossible to grant" Ms. Rogler the "relief" of reversing and vacating the barring notice. *Carlin v. Ctrs. for Disease Control & Prevention*, No. 24-5037, 2024 WL 2280991, at *1 (D.C. Cir. May 20, 2024) (summarily affirming a district court's determination that a case was moot because the challenged declaration and mask mandate had ended).[7] As a result, the court will dismiss this request without prejudice for lack of subject-matter jurisdiction.

---

[6] Ms. Rogler has not moved for leave to file a surreply to address Defendants' mootness argument, but "[s]ubject matter jurisdiction cannot be waived" and this court has "'an independent obligation to assure [itself] of jurisdiction.'" *Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014) (quoting *Floyd v. District of Columbia*, 129 F.3d 152, 155 (D.C. Cir. 1997)).

[7] Nor is Ms. Rogler's request to reverse and vacate the barring notice saved by one of the two principal exceptions to mootness. The first involves a defendant's "voluntary cessation of the challenged activity," which "will only moot a case if there is no reasonable expectation . . . that the alleged violation will recur and interim relief or events have completely and irrevocably

(*continued on next page*)

## B. Federal Claims

On the merits, the court begins with Ms. Rogler's federal-question claims against Mr. Reyes-Gavilan, Dr. Chapman, and the Mt. Pleasant Library's head librarian in their official and individual capacities, against Ms. Fuller in her individual capacity and Mr. Banks in his official capacity, against the DCPL Trustees in their official capacities, and against the two "Jane Doe" defendants.[8] *See* ECF No. 1-2, at 2-4. Ms. Rogler alleges violations of the First Amendment and the Fifth Amendment. *Id.* at 10 ¶ 26. These claims arise under Section 1983, which provides a cause of action against any "person who, under color of . . . State . . . or the District of Columbia [law]" deprives an individual of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The court rejects Ms. Rogler's claims.

### 1. Official-capacity claims under Section 1983

For official-capacity claims, a plaintiff bringing a Section 1983 action may sue a municipality like the District, which is considered a "person" under the statute. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978) (internal quotation marks omitted); *see Atchinson v.*

---

eradicated the effects of the alleged violation." *Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011) (alteration in original) (internal quotation marks omitted). The second—for harms that are capable of repetition yet evading review—"pertains to situations in which the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, yet there is a demonstrated probability that the same controversy will recur involving the same complaining party." *Id.* at 647 (internal quotation marks omitted). This case does not fall within the first exception because Defendants did not voluntarily stop enforcing the barring notice. Instead, the one-year bar ended. The capable-of-repetition-yet-evading-review exception also does not apply because, as the court has explained, s*ee supra* pp. 9-10, Ms. Rogler has not established a sufficient likelihood that harms she has alleged will recur.

[8] Based on the allegations in Ms. Rogler's complaint, the "Jane Doe" Defendants appear to be the employee and manager at the Mt. Pleasant Library who spoke with Ms. Rogler in connection with the bathroom incident. *See* ECF No. 1-2, at 6-7 ¶¶ 5-7. Accordingly, the same analysis that applies to the other DCPL employees applies to these Defendants.

*District of Columbia*, 73 F.3d 418, 423-24 (D.C. Cir. 1996); D.C. Code § 1-102 (establishing the District as an entity that can "sue and be sued" as a "municipal corporation"). When a plaintiff sues a government official in his official—and not individual—capacity, the action is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Atchinson*, 73 F.3d at 424 (construing claims against a police officer in his official capacity as "equivalent" to claims against the District); *Johnson v. Fenty*, No. 10-5105, 2010 WL 4340344, at *1 (D.C. Cir. Oct. 1, 2010) ("Appellant's claims under . . . [Section] 1983 against the Mayor . . . in his official capacity are treated as claims against the District . . . itself."). The court therefore treats Ms. Rogler's official-capacity claims against DCPL officials and employees as if Ms. Rogler had sued the District itself.[9]

"To state a claim for relief against a municipality under [S]ection 1983, a plaintiff must satisfy two requirements: she must plead 'a predicate constitutional violation' and that 'a custom or policy of the municipality caused the violation.'" *Blue v. District of Columbia*, 811 F.3d 14, 18 (D.C. Cir. 2015) (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)); *see Monell*, 436 U.S. at 694. The D.C. Circuit has "identified several ways in which a plaintiff may allege a municipal policy or custom": pointing to (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show

---

[9] The court also notes that Ms. Rogler's request for punitive damages cannot be sustained against the Defendants sued in their official capacities. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see Daskalea v. District of Columbia*, 227 F.3d 433, 446 (D.C. Cir. 2000).

'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Blue*, 811 F.3d at 18-19 (quoting *Baker*, 326 F.3d at 1306). When assessing an official-capacity claim, the court may assume that a constitutional violation occurred and consider whether the plaintiff has plausibly alleged a policy or custom that caused the purported violation. *See id.* at 18; *see also Hampton v. Comey*, 139 F. Supp. 3d 1, 7 (D.D.C. 2015); *Blue v. District of Columbia*, 850 F. Supp. 2d 16, 25, 29 (D.D.C. 2012), *aff'd*, 11 F.3d 14.

Here, Ms. Rogler has not identified which method she would use to establish an unlawful municipal policy or custom; rather, she argues that Defendants *violated* District law when issuing the barring notice. ECF No. 1-2, at 8-10 ¶¶ 13-15, 22-23. That lapse alone warrants dismissal of Ms. Rogler's official-capacity claims. *See Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) ("[Plaintiff's] . . . claim fails because she 'never indicated the contours of any type of municipal policy.'" (quoting *Blue*, 811 F.3d at 20)); *Perkins v. District*, No. 26-CV-430, 2026 WL 1295703, at *6 (D.D.C. May 12, 2026) (dismissing a complaint for failure to allege a policy or custom under *Monell* because the plaintiff "[did] not challenge the procedures themselves, but rather the fact that she was exited from the program in violation of those procedures"). To be sure, the "complaint includes many factual allegations about how [Ms. Rogler] was treated," but "it contains essentially no factual allegations that show that [her] treatment was caused by [a custom] or policy." *Mwimanzi v. District of Columbia*, No. 25-CV-102, 2026 WL 632480, at *2 (D.D.C. Mar. 6, 2026). "Although the court could try to surmise which theory of municipal liability has the strongest support in the complaint, this is not [its] role." *Givens*, 111 F.4th at 122.[10]

---

[10] Even if the court assumed that Ms. Rogler intended to assert a viable method for proving a municipal policy or custom, *see Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 341

(*continued on next page*)

### 2. Individual-capacity claims under Section 1983

The court nevertheless considers whether Ms. Rogler has adequately pleaded predicate constitutional violations because, for her individual-capacity claims, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Jackson v. District of Columbia*, No. 25-CV-889, 2026 WL 890452, at *14 (D.D.C. Mar. 31, 2026) (quoting *Graham*, 473 U.S. at 166). Liberally construing the complaint, the court concludes that Ms. Rogler has not plausibly asserted predicate violation of the First or Fifth Amendments. Dismissal of Ms. Rogler's individual-capacity Section 1983 claims is therefore warranted.

(D.D.C. 2018) (reading a pro se complaint liberally and "assum[ing]" the plaintiff's theory of liability), she has not alleged facts sufficient to maintain a Section 1983 claim against Mr. Reyes-Gavilan, Dr. Chapman, Mr. Banks, or the Mt. Pleasant Library's head librarian in their official capacities. Ms. Rogler's complaint is silent as to any explicit policy permitting DCPL to issue barring notices as retaliation for protected speech, to fail to respond to appeals of those notices, or to refuse to consider evidence of self-defense. *See generally* ECF No. 1-2, at 2-12. Nor has Ms. Rogler alleged that anyone "involved" in issuing her DCPL barring notice had "'final authority to establish municipal policy.'" *Perkins*, 2026 WL 1295703, at *7 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986)); *see Jones v. District of Columbia*, 715 F. App'x 1, 3 (D.C. Cir. 2018) (concluding that the plaintiffs "allege[d] no facts that would show or even support a reasonable inference that any of the defendant officials was a final policy maker . . . , and they identif[ied] no basis in District law for drawing such a conclusion"). Ms. Rogler does not identify "'a series of decisions' made by inferior officials that 'manifest[] a "custom or usage" of which the superior must have been aware.'" *Perkins*, 2026 WL 1295703, at *7 (alteration in original) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)). She likewise does not contend that "the District's failure to train or supervise its employees constituted 'deliberate indifference' to the risk of a constitutional violation." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Put simply, Ms. Rogler is unable to identify an explicit policy, and her conclusory assertions do not "clear" the "high hurdle" of pleading "practices so persistent and widespread as to practically have the force of law." *Ryan*, 306 F. Supp. 3d at 346 (internal quotation marks omitted). Finally, Ms. Rogler's assertions that DCPL does not have "rules on self-defense" or "offer any training to its patrons on self-defense" are irrelevant. ECF No. 1-2, at 9 ¶¶ 18-19. The policy or custom in question must be the "moving force behind the constitutional violation." *Ryan*, 306 F. Supp. 3d at 341 (quoting *Baker*, 326 F.3d at 1306). Nothing in Ms. Rogler's complaint suggests that DCPL's failure to inform patrons about or train them in self-defense caused the constitutional violations that Ms. Rogler has alleged. The complaint thus does not sufficiently allege any theory of municipal liability.

*a. First Amendment*

Ms. Rogler alleges that Defendants "retaliated against [her] for objecting to being secretly video-taped" in the Mt. Pleasant Library, "complaining about fecal matter in [the] handicap[ped] stall," and "stating [that] she would sue in federal court." ECF No. 1-2, at 9 ¶ 20. To plead a First Amendment retaliation claim, an individual must allege that (1) "[s]he engaged in protected conduct"; (2) "the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again'"; and (3) "there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against [her].'" *Doe v. District of Columbia*, 796 F.3d 96, 107 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)). Defendants focus on the third requirement. In their view, no "causal connection [exists] between any protected speech and the barring notice" because Ms. Rogler was barred from DCPL premises due to her altercation with another library patron. ECF No. 18, at 12. The court concludes that Ms. Rogler has failed to state a First Amendment retaliation claim.

Aside from advancing the conclusion that a First Amendment violation occurred, ECF No. 1-2, at 9 ¶ 20—which the court need not credit, *see Iqbal*, 556 U.S. at 678 (explaining that the court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Twombly*, 550 U.S. at 555))—Ms. Rogler does not allege that DCPL barred her from its premises in retaliation for protected speech. Instead, she primarily claims that the one-year bar resulted from the altercation in which she defended herself. ECF No. 1-2, at 7-8 ¶¶ 8-15 (describing the altercation, which was followed by the barring notice). That explanation for DCPL's bar is consistent with Dr. Chapman's response to Ms. Rogler's bar appeal. ECF No. 1-2, at 13 (explaining that Ms. Rogler was barred on December 22, immediately after the altercation). It also aligns with Ms. Rogler's theory of a Fifth Amendment equal protection violation in her complaint,

where Ms. Rogler implies that DCPL treated her differently because it "took no action against the initial aggressor [and] perpetrator." *Id.* at 8 ¶ 14; *see infra* Section III.B.2.c. Put differently, Ms. Rogler's First Amendment and equal protection claims are inconsistent; the former is premised on the conclusion that DCPL retaliated against her for threatening to sue, but the latter assumes that the barring notice resulted from the later altercation at the library.

To be sure, Ms. Rogler is permitted to plead claims in the alternative, *see* Fed. R. Civ. P. 8(d)(2), but the defect in her First Amendment claim stems from the absence of *factual* allegations tying DCPL's barring notice to her protected speech. Ms. Rogler has not alleged that the DCPL officials who imposed the one-year bar even knew of her prior encounter with Mt. Pleasant Library employees in the bathroom, *see generally* ECF No. 1-2, at 2-12. *See Shinabargar v. Bd. of Trusts. of Univ. of D.C.*, 164 F. Supp. 3d 1, 17 (D.D.C. 2016) (dismissing a First Amendment retaliation claim in part because "[t]he plaintiff [made] no allegation . . . that the [official who allegedly retaliated against her] knew about [the protected speech]"); *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 347 (D.D.C. 1999) (granting a motion to dismiss a First Amendment retaliation claim in part because the plaintiff did not allege that the defendant undertaking the purportedly retaliatory action received input from another defendant who knew of the protected speech). Nor does Ms. Rogler contend that DCPL's proffered basis for the barring notice was pretextual or otherwise false. *Cf. Moore v. Castro*, 192 F. Supp. 3d 18, 44 (D.D.C. 2016) (concluding that a plaintiff had sufficiently alleged causation in a Title VII and age-discrimination case by plausibly "disput[ing] [the defendant's] explanation for terminating him").

Although Ms. Rogler does not allege or argue that causation can be inferred based on the *timing* of her protected speech and the subsequent barring notice, *see* ECF No. 1-2, at 2-12; ECF

No. 22, at 1-3 (arguing that Defendants have failed to offer "admissible evidence" in support of their motion to dismiss), the court nonetheless considers the argument consistent with its obligation to liberally construe the complaint, *Erickson*, 551 U.S. at 94. "Causation may be inferred . . . when the retaliatory act follows close on the heels of the protected activity." *Goodwin v. District of Columbia*, 579 F. Supp. 3d 159, 174-75 (D.D.C. 2022) (alteration in original) (quoting *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 46-47 (D.D.C. 2021)). While Ms. Rogler does not state when in December 2024 she made the protected statements in relation to the bathroom incident, she alleges that her altercation with another library patron occurred on December 21 or 22, and DCPL issued the barring notice December 22, 2024. *Compare* ECF No. 1-2, at 7 ¶ 8 (alleging that the bathroom incident occurred "[i]n December of 2024"), *with id.* at 13 (explaining that Ms. Rogler was barred on December 22, 2024). Without more, this temporal proximity does not save Ms. Rogler's First Amendment claim because there is an "'obvious alternative explanation'" for the one-year bar from DCPL premises—the altercation with another library patron. "As between that 'obvious alternative explanation'" for the one-year bar and the retaliation Ms. Rogler "asks [the court] to infer, [retaliation] is not a plausible conclusion." *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567); *see Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024) ("At the motion to dismiss stage, a plaintiff need not 'rule out every possible lawful explanation,' but rather only dispel any 'obvious alternative explanation[s].'" (alteration in original) (quoting *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 373 (8th Cir. 2017))). The alternative explanation here is apparent on the face of DCPL's April 2025 letter to Ms. Rogler, ECF No. 1-2, at 13, and she has not provided specific facts that would support the alternative inference that DCPL barred her from its premises based on her protected speech weeks earlier. Accordingly, Ms. Rogler has not plausibly alleged a First Amendment violation that would support Section 1983 claims.

*b. Fifth Amendment due process*

Ms. Rogler next asserts that Defendants "violated [the] Due Process Clause of [the] Fifth Amendment." ECF No. 1-2, at 10 ¶ 26. The court liberally construes her complaint to raise both procedural and substantive due process claims. *See Haines*, 404 U.S. at 520. The procedural due process claim concerns Defendants' failure to "respond timely to [Ms.] Rogler's appeal." ECF No. 1-2, at 10 ¶ 23. As far as the court can tell, the substantive due process claim concerns DCPL's failure to credit Ms. Rogler's alleged use of self-defense during the altercation when assessing whether to impose a one-year bar, *id.* at 9 ¶ 22, or Ms. Rogler's asserted rights to privacy and to use self-defense, *see id.* at 10 ¶ 26. Defendants contend—and the court agrees—that Ms. Rogler has failed to plausibly allege a due process violation.

*Procedural due process.* The Fifth Amendment to the U.S. Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "'The fundamental requisite of due process of law is the opportunity to be heard' at 'a meaningful time and in a meaningful manner.'" *Alaska Commc'ns Sys. Holdings, Inc. v. Nat'l Lab. Rels. Bd.*, 6 F.4th 1291, 1298 (D.C. Cir. 2021) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). When evaluating a procedural due process claim, the court must "first determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993). Then, the court evaluates whether the deprivation of interest occurred without sufficient process. *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (explaining that the process due is "flexible and calls for such procedural protections as the particular situation demands").

On the first requirement, "[c]ourts have held that access to a public library is a protected right." *Christian v. District of Columbia*, No. 24-CV-2386, 2026 WL 654350, at *4 (D.D.C. Mar. 9, 2026) (collecting cases). On the second, Ms. Rogler has identified process that she was allegedly due—timely consideration of her appeal—but even with DCPL's purportedly delayed response, the one-year barring notice resulted from a process that complies with the Fifth Amendment. To begin, Ms. Rogler was afforded the "essential requirements of due process" when DCPL gave her "notice and an opportunity to respond" to the suspension. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). And Defendants' alleged failure to timely respond to Ms. Rogler's request for administrative review does not render the barring notice constitutionally suspect. *See Duckett v. Quick*, 282 F.3d 844, 848-49 (D.C. Cir. 2002) (explaining that an agency's failure to follow its own regulations for explaining its decisions did not violate the Due Process Clause because "the procedures required before a person may be deprived of his constitutional right to liberty are derived not from the regulation but from the Constitution itself").

*Substantive due process*. Substantive due process "protects those fundamental rights and liberties which are, objectively 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citations omitted) (first quoting *Moore v. E. Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion); then quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 326 (1937)). To allege a violation of substantive due process, a plaintiff must "show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities." *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988). The behavior must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience." *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

The D.C. Circuit has recognized two forms of "grave unfairness" that would qualify for relief under Section 1983: (1) "a substantial infringement of state law prompted by personal or group animus," and (2) "a deliberate flouting of the law that trammels significant personal or property rights." *Silverman*, 845 F.2d at 1080. When evaluating a Section 1983 claim, the court must "focus on the allegations in the complaint to determine how [the plaintiff] describes the constitutional right at stake and what the [defendant] allegedly did to deprive her . . . of that right." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

In her complaint, Ms. Rogler does not allege that a "personal or group animus" led to DCPL's barring notice, *see generally* ECF No. 1-2, at 2-12, but she does contend that DCPL "ignored that the initial aggressor took [Ms.] Rogler's property and was threatening [her]," *id.* at 9 ¶ 22. Ms. Rogler's conclusory assertion about DCPL's failure to consider self-defense is belied by record materials that the court may consider on a Rule 12(b)(6) motion. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice."). Dr. Chapman, DCPL's Chief of Public Safety, stated that the Office of Public Safety "consider[ed]" Ms. Rogler's bar appeal and "examined" her case before concluding that Ms. Rogler had violated DCPL rules. ECF No. 1-2, at 13. That process is consistent with DCPL's giving due consideration to Ms. Rogler's self-defense argument. "Events may not have unfolded as [Ms. Rogler] wished, but [her] dissatisfaction with [DCPL's administrative review] do[es] not form a basis for a due process violation." *Melton v. District of Columbia*, 85 F. Supp. 3d 183, 193 (D.D.C. 2015). In sum, Ms. Rogler has not asserted facts that permit the "reasonable inference"

that Defendants ignored evidence before denying her appeal. *Iqbal*, 556 U.S. at 678. The barring notice does not suggest that DCPL "deliberate[ly] flout[ed] . . . the law" when denying Ms. Rogler's appeal request, *Silverman*, 845 F.2d at 1080, or otherwise engaged in behavior "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Estate of Phillips*, 455 F.3d at 403 (quoting *Lewis*, 523 U.S. at 847 n.8); *see Christian*, 2026 WL 654350, at *5 (denying a substantive due process claim based on DCPL's one-year bar on entering DCPL premises because nothing in the complaint "qualif[ied] as egregious conduct that 'shocks the conscience'" (quoting *Estate of Phillips*, 455 F.3d at 403)).

Ms. Rogler's invocation of constitutional rights to privacy and to use self-defense fare no better. As for the privacy-related claim, the court understands Ms. Rogler to assert a right to use a public restroom without being "secretly video-taped." ECF No. 1-2, at 9 ¶ 20. Even after liberally construing the complaint, the court cannot reasonably infer that Defendants violated Ms. Rogler's substantive due process rights. Ms. Rogler does not cite a case holding that any right to bodily integrity encompasses the conduct that she alleges. *See generally* ECF No. 22. Nor does she allege facts that would give credence to her claim. For example, Ms. Rogler does not specify whether any alleged videotaping captured only the common areas of the restroom or, instead, the inside of the stall that she intended to use. Similarly, she does not specify what private matters the alleged cameras taped. Without such facts, the court cannot conclude that Ms. Rogler has alleged a predicate constitutional violation.

As for the self-defense claim, Ms. Rogler's argument suffers from two defects. First, for the reasons the court has explained when addressing her procedural due process claim, the complaint does not permit the reasonable inference that DCPL affirmatively denied Ms. Rogler of any right to use self-defense. *See supra* pp. 19-20. Second, Ms. Rogler fails to substantiate her

constitutional claim with any authority. *See generally* ECF No. 1-2, at 2-12; ECF No. 22. For these reasons, the court cannot conclude that DCPL's treatment of Ms. Rogler's assertion of self-defense displayed any "personal or group animus" or amounted to "a deliberate flouting of the law." *Silverman*, 845 F.2d at 1080. Accordingly, Ms. Rogler has failed to state a claim under Section 1983 for a substantive due process violation.

*c. Fifth Amendment equal protection*

Finally, Ms. Rogler maintains that the one-year barring notice violated equal protection principles. The Fourteenth Amendment's Equal Protection Clause does not apply to the District of Columbia, *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954), but the District is "subject to that requirement by virtue of the Fifth Amendment's guarantee of due process of law," *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996); *see Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1147 (D.C. Cir. 2023). "The Equal Protection Clause provides a basis for challenging legislative classifications that treat one group of persons as inferior or superior to others, and for contending that general rules are being applied in an arbitrary or discriminatory way." *Jones v. Helms*, 452 U.S. 412, 423-24 (1981). A plaintiff like Ms. Rogler "must allege facts showing that [s]he 'was subject to differential treatment because of membership in a protected class,' or that '[s]he was arbitrarily and intentionally treated differently from others who are similarly situated—and the government has no rational basis for the disparity.'" *Christian*, 2026 WL 654350, at *5 (quoting *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 158 (D.D.C. 2014)). In Defendants' view, the complaint is devoid of factual allegations that would support an equal protection claim. The court agrees.

Ms. Rogler has not alleged that DCPL's barring notice resulted from differential treatment based on a protected characteristic. *See generally* ECF No. 1-2, at 2-12; ECF No. 22. Instead, she

implies that DCPL treated her differently by barring her from entering DCPL's premises but "[taking] no action against the initial aggressor [and] perpetrator." ECF No. 1-2, at 8 ¶ 14. But Ms. Rogler's argument assumes that she and the alleged initial aggressor are similarly situated, whereas the barring notice indicates that DCPL's Office of Public Safety determined that Ms. Rogler—and presumably not the other woman involved in the altercation—violated the DCPL rule prohibiting patrons from "[c]omitting, or attempting to commit, any activity that would constitute a violation of any Federal or District of Columbia criminal statute, ordinance, code, or law." *Id.* at 13.

For much the same reason, Ms. Rogler has not established that the barring notice lacked a rational basis. "At the motion-to-dismiss stage, . . . the plaintiff must plausibly allege facts showing that no reasonably conceivable state of facts could provide a rational basis for the challenged policy." *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 396 (D.C. Cir. 2022). Here, a reasonably conceivable explanation for DCPL's one-year bar appears on the face of the letter Dr. Chapman sent to Ms. Rogler: administrative review led DCPL's Office of Public Safety to conclude that Ms. Rogler had violated a category four rule. The court may reasonably infer from Dr. Chapman's letter that DCPL did not "ignore[]" the purported initial aggressor, ECF No. 1-2, at 9 ¶ 22, but instead concluded that the other woman involved in the altercation had not violated DCPL rules. Absent allegations suggesting otherwise, Ms. Rogler's equal protection theory lacks merit.

* * *

Because Ms. Rogler has not adequately pleaded violations of the First Amendment or the Fifth Amendment, she has failed to state a Section 1983 claim against the Defendants in their individual capacities.

### C. Supplemental Jurisdiction Over State-Law Claims

Ms. Rogler's two remaining claims—under the DCHRA and for common–law invasion of privacy—sound in state, not federal, law. When Defendants removed Ms. Rogler's case to federal court, this court had supplemental jurisdiction over the state-law claims because they formed "part of the same case or controversy" as the federal claims invoking the court's original jurisdiction. 28 U.S.C. § 1367(a). Because the court dismisses the federal claims, *see supra* Section III.B, it must decide whether to "decline to exercise supplemental jurisdiction" over the state-law claims, 28 U.S.C. § 1367(c)(3); *see Ali Shafi v. Palestinian Auth.*, 642 F.3d 1088, 1097 (D.C. Cir. 2011) ("Whether to retain jurisdiction over pendent . . . claims after the dismissal of the federal claims is a matter left to the sound discretion of the district court[.]" (first alteration in original) (quoting *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005))). The court considers the following factors when deciding whether it should decline to exercise supplemental jurisdiction: whether (1) "the claim[s] raise[] a novel or complex issue of State law"; (2) "the claim[s] substantially predominate[] over" Ms. Rogler's federal claims; (3) the court will "dismiss[] all claims over which it has original jurisdiction"; and (4) there are "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1) to (4). In this inquiry, "[g]eneral equitable factors guide the [court's] decision . . . , including judicial economy, convenience, fairness, and comity." *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 348 (D.D.C. 2018).

On balance, declining to exercise supplemental jurisdiction over Ms. Rogler's remaining claims is appropriate. To begin, the court has concluded that dismissal is warranted for each of Ms. Rogler's federal causes of action. *See* 28 U.S.C. § 1367(c)(3). This case does not have a complex procedural history, and the court has not developed any "familiarity with the issues presented by [Ms. Rogler's] state-law claim[s]." *Ryan*, 306 F. Supp. 3d at 349 (describing a lack

of familiarity over the state-law claim despite a "protracted procedural history in federal court"); *see Shekoyan*, 409 F.3d at 424 (similar). Comity also favors allowing Ms. Rogler to litigate her DCHRA and common–law claims in Superior Court. Both claims "sound[] entirely in an area of law far more familiar to the District of Columbia Superior Court than this one." *Ryan*, 306 F. Supp. 3d at 349. Nor will Ms. Rogler be prejudiced by the court's decision to not exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(d) (tolling the statute of limitations for any claim implicating the court's supplemental jurisdiction "while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period"). Accordingly, the court will dismiss Ms. Rogler's DCHRA and invasion-of-privacy claims without prejudice, and Ms. Rogler "may bring [those] claim[s], if [s]he so chooses and if [they are] not otherwise barred, in the appropriate local court." *Ryan*, 306 F. Supp. 3d at 349.

## IV. CONCLUSION

For the foregoing reasons, the court will grant Defendants' Motion to Dismiss, ECF No. 18, and dismiss Ms. Rogler's Complaint, ECF No. 1-2, at 2-12, without prejudice. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: September 30, 2026